## No. 14,060.

GUARANTEE TRUST AND SAFE DEPOSIT COMPANY vs. WILLIAM J. HOLZELL.

### SYLLABUS.

1.  The timber was taken from one of two tracts of land. On the land of plaintiff this timber was large, and corresponded in every particular with the timber it claims as having been taken from its land; on the other, from which the defendants claim the trees were removed, there was very little timber and it was small in size. The defendant admitted that he had taken timber from the plaintiff's land, but failed to settle for as much as he had taken.
2.  The weight of the evidence is with plaintiff, and for that reason defendants are held to pay an amount equal to the value of the trees at the time they were sold.

3. Fifteen hundred logs were sequestered. Six hundred and forty-two logs had already been paid for, and the defendants owe for the remainder, viz, calculating three logs for each tree, which appears to be generally the number of logs usual to the tree.

APPEAL from the Sixth Judicial District, Parish of Ouachita—Hall, J.

*John Merritt Munholland* and *Andrew Augustus Gunby,* for Plaintiff, Appellant.

*William Francis Millsaps,* for Defendant, Appellee.

*E. Tyler Lamkin,* for Intervenors, Appellees.

The opinion of the court was delivered by

BREAUX, J. Plaintiff is the owner of lands in Ouachita Parish. It charged W. J. Holsell, defendant, with having appropriated a number of trees it valued at three thousand dollars, for which it sues, also for damages to the land in the sum of eight hundred dollars.

The trees, plaintiff avers, were unlawfully cut on its land by the defendant, by whom they were taken and appropriated. Plaintiff further avers that the defendant has acknowledged the trespass on its land by paying for six hundred and forty-two sticks or logs of the timber, but that he has not paid for all that he has unlawfully appropriated.

On plaintiff's suggestion and for its acount, some fifteen hundred logs were sequestered, which plaintiff avers were in defendant's possession. Dodge and Sundberry intervened in the suit and claimed to have bought these logs from the defendant and to have acquired the right of ownership before the trees had been sequestered.

The defendant controverts plaintiff's right to recover the amount claimed. His contention in defense was that he had paid for the logs and that the other logs sequestered had not been removed from plaintiff's land, as it contended, but that he had bought them from Lee Harris, the owner of a quarter section of land adjacent to plaintiff's. The District Court reached the conclusion that the evidence sustained the defendants and intervenors in their defense, rejected plaintiff's demand, and dissolved its writ of sequestration. Plaintiff appeals.

Plaintiff, in the first place, complains of the ruling in the District Court excluding testimony which it offered to prove that the interve-

nors were fully advised that the timber was the property of plaintiff, and testimony also to prove that one of the defendant's vendors, Lee Harris, had not been sincere in his dealings with plaintiff and representations to its agents, Cooper and Armstrong.

We take it that the objection made to the judge's ruling in excluding the testimony is to be considered as part of the argument; that it is to be considered only in that light, and that the plaintiff does not insist upon a remanding of the case to admit the excluded testimony.

Plaintiff's counsel closes the argument upon this point with the statement that whilst plaintiff was placed at a disadvantage by the ruling, none the less the record contains ample proof to enable this court to do justice in the case. We take it from the conclusion of plaintiff just stated that plaintiff submitted its case on the record as now made up and that it does not wish the case remanded.

All the timber, it appears, was cut from Section 17, owned by plaintiff. Defendant acknowledges that he had cut the timber from this land, but fixed the quantity at six hundred and forty-two logs.

Plaintiff's agent, W. L. Cooper, testifies that defendant admitted to him that he had cut all the pine timber cut on Section 17, which he stated was six hundred and forty-two sticks, for which he was willing to pay. A survey was made of the land and this witness made an estimate of the number of trees cut and fixed it at four hundred and twenty-six trees. This estimate, if taken as correct, shows a larger number of trees taken than was reported by the defendant. In making this estimate, this witness testifies that he counted all the recently cut stumps; that about three years previous, timber had been cut on the land; that the bark from the stumps of the old cuts had fallen off and could be easily differenced from the stumps cut within three to six months preceding. The bark had not fallen off the recent stumps.

A second witness for plaintiff, S. I. Wall, assisted Cooper in making the estimate, and explains how it was made. In the argument, we were informed that this witness is a respectable farmer living in the neighborhood of the land on which the defendant is charged to have trespassed. He says that defendant had his logging camp about the center of Section 17. He saw the wagons hauling the pine timber away, "said to be" defendant's wagons. As well say here that another of plaintiff's witnesses testified that all the wagon tracks converged to the place at which defendant rafted the timber·

The defendant, on the other hand, contended in the lower court, as he does in this court, that about twelve hundred and thirty of the logs sequestered were bought by him and hauled away from the land of Lee Harris. We refer to this contention at this time because this witness was introduced by plaintiff to prove that the number of logs removed from Lee Harris' land was less than the number for which defendant Holsell contends and consequently that the number of trees taken from Section 17 must have been larger than defendant admitted. The larger the number of trees hauled from the Lee Harris land, the less the number taken from plaintiff's land. It will be borne in mind that the raft sequestered had logs hauled from the one tract or the other.

This witness, Wall, had, about seven years before, bought all the merchantable timber on this Harris land. He afterward qualified this by stating that the timber he removed was timber twenty inches in diameter, and thereby gives rise to the inference that he did not buy all the merchantable timber, as it appears that there is merchantable timber having trunks less than twenty inches in diameter.

Another witness for plaintiff, son of Wall before named, testified that men working for defendant began to cut on Section 17 early in the fall of 1899 (these men remained until spring); that he saw no one else cutting timber on this land. This witness also helped to remove timber for Holsell from the Harris land adjacent, and did not think that it was possible at the time to find more than one hundred thousand feet remaining on the Harris land. He saw defendant's timber after it had been sequestered; it was large timber, measuring in diameter from eighteen inches up.

Mr. Hay, another farmer residing near Section 17, testified that there was little timber on the Lee Harris tract and that small. He offered only fifteen dollars for it before defendant began cutting timber.

This brings our summary of the testimony of plaintiff's witnesses to a close.

Defendant, W. J. Holsell, died after suit had been brought. The legal representatives of the succession were properly recognized as defendants in this suit. His brother, as a witness, says that the six hundred and forty-two logs paid for by defendant were the number removed from plaintiff's land. He knew this, he said, because he made careful measurement of the timber at the time in order to settle with Lee Harris as the Drew Investment Company's agent. Another employee is

equally as positive and accounts for his certainty by relating an incident in connection with the work. In this he is corroborated by a fellow workman. The witnesses for the defendants controvert the statement of those of plaintiff about the number of trees on the land of Lee Harris. They fix the number at twelve hundred and thirty cut on this land. They testified that they counted both the trees cut on plaintiff's land and the trees cut on the Harris land and gave the exact figure of each.

We close the transcript in the case after our examination, feeling convinced that the former defendant, the late J. W. Holsell, had cut a larger number of trees than that for which he paid plaintiff.

The two witnesses for the plaintiff went on the ground and counted the trees cut on Section 17. Two of the witnesses for the defendant had previously counted them. There is a great difference between the former and the latter. We are inclined to accept the count of freshly cut stumps made by the two witnesses for the plaintiff because it received considerable support from other facts revealed by the record. They are: that the preponderance of the testimony shows that there was only little timber on the land of Harris; that it was smaller in diameter than the diameter of a large number of the trees in the raft sequestered; the Harris timber had been cut and culled. He had only small timber; defendant's witnesses do not prove by their testimony that they knew the lines of the respective owners of these lands; while the timber on Section 17 was thick, large and fine timber from which it was not difficult to remove timber measuring twenty inches and up in diameter; and, lastly, because W. J. Holsell said to Cooper, plaintiff's agent and witness whose testimony the record does not impeach that he "cut all of the timber that was cut on Section 17."

Defendants seek to give additional strength and force to their testimony by reference to the fact that it discloses that two of their witnesses while working together engaged in a friendly contest with two others also engaged in sawing trees into logs as to which would cut the most timber, and in that way they account for having kept a tally. Ordinarily, this manner of keeping an account should not outweigh the testimony of men who had made it their business to find out and count the number of trees felled.

True, in addition to these workmen, a witness, Harris, testified. The record discloses that defendants referred to this witness (either person-

ally or as the agent of the Drew Investment Company) as the one from whom the late J. W. Holsell, the original defendant, had obtained the authorization to cut trees on Section 17. This witness denies that he ever gave any such consent to the defendant, J. W. Holsell, and contradicts in this important particular one of the Holsells and one of their witneses, as well as the averments of defendants' answer. Defendants would scarcely invoke the testimony of the witness Harris as corroborating them in any other particular. This witness, we note, testified that about eight hundred logs were taken from his place and that four logs to the tree was about the average.

If that be the number of trees removed from the Harris land, the number taken from Section 17 must be, at least, equal to that allowed by our decree,—four logs to the tree, equal 200 trees; on that basis the remaining trees were not cut on this land.

Be this as it may, the testimony of other witnesses stripped that of Lee Harris of all importance as a witness for defendant in this case. Lastly, on this point the timber sequestered was above the average in diameter and larger than was left on the Harris land after the trees had been culled and moved away and this before defendant commenced working the two tracts before mentioned.

We pass from consideration of the number of trees cut on plaintiff's land and take up the question of amount to which plaintiff is entitled. It is contended by plaintiff that the owner whose trees have been cut without his consent has the right to seize and recover the timber as his property wherever found (Vol. 26, p. 566, of the first edition of the American and English Encyclopedia of Law) and to damages actual and exemplary. We are not inclined to the view that plaintiff is entitled to more than the actual value of the trees at the date they were sequestered. This is not a case of aggravated trespass. From the brief of plaintiff we quote as expressing our own view upon the subejct.

"It is charitable to presume that defendants' witnesses did not know where the lines were and therefore testified simply as to what Lee Harris told them as to where the lines run." We are of the opinion that under the circumstances the defendant rendered himself liable in damages to the amount of the value of the property. Grevenberg vs. Borel, 25 Ann. 530; Marin vs. Satterfield, 41 Ann. 742. We take it that the amount for which the logs were sold by defendant fairly shows their value.

As relates to the damages to the land, plaintiff's contention is that when land is injured by the cutting or destruction of trees such injury may be taken into consideration in estimating damages. We think it answer enough to say that the trees were full grown timber trees and that in such a case the damage is usually the value of the trees.

Plaintiff has already received one hundred and sixty dollars, as before stated. The defendants must be held to pay this balance—*i. e.*, seven hundred and eighteen 64-100 dollars—or deliver to the proper authorities the logs to be sold. *The intervenor having* acquired no right which can be sustained as against plaintiff, the demand set up by this intervenor must be rejected. *The property had not been delivered* when it was sequestered and none of the logs *had been paid for.* Four hundred and twenty-six trees were cut on Section 17 (transcript, p. 60). Two hundred and ten trees were paid for. Two hundred and sixteen trees are due, or six hundred and forty-eight logs, worth the amount stated in our decree, on the basis of three logs to the tree, which we take that the evidence shows is correct.

It is therefore ordered, adjudged, and decreed that the judgment appealed from is reversed, annulled, and avoided, and the judgment is hereby rendered in favor of plaintiff and against defendants for the sum of seven hundred and eighteen and 64-100 dollars ($718.64), with interest from judicial demand.

It is further ordered, adjudged, and decreed that intervenor's demand be rejected.

Defendants are condemned to pay the costs of the District Court, the intervenors their costs in that court, and further that defendants and intervenors and appellee pay each his costs of appeal .

Rehearing refused.